**Daniel R. RUTHERFORD and Linda D. Rutherford, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, District Director of the Internal Revenue Service and Marvin Kuntz, Defendants-Appellees.**

No. 81–1548.

United States Court of Appeals, Fifth Circuit.

April 11, 1983.

Daniel R. Rutherford, pro se.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., Robert A. Bernstein, Kenneth L. Greene, Wynette J. Hewett, Attys., Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before THORNBERRY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Taxpayers Daniel and Linda Rutherford claim that Internal Revenue Service Agent Marvin Kuntz violated their constitutional right to due process by willfully and maliciously assessing them for taxes they did not owe, harassing them into paying those taxes, and forcing them to sue for a refund. The district court 528 F.Supp. 167 granted judgment for Kuntz on the theory that established avenues for recovery of over-assessments from the Government satisfy the Rutherfords' due process interests. We reverse. The administrative and judicial refund proceedings available to the Rutherfords are not designed to, and do not, protect the range of interests they fairly may be understood to assert.

I.

Since the complaint was dismissed for failure to state a claim upon which relief can be granted,[1] we will present the facts as the plaintiffs claim them to be in their pleadings. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 1082, 31 L.Ed.2d 263 (1972); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Rathborne v. Rathborne,* 683 F.2d 914, 918 n. 14 (5th Cir.1982).

The Rutherfords say their problems started in the spring of 1974, when IRS Agent Marvin Kuntz began an audit of their 1971, 1972, and 1973 tax returns. Over the next eighteen months, Kuntz harassed the Rutherfords with unjustified tax assessments and abusive displays of authority. He invented additional gross income of $5943.83 for the year 1971 and $83,000 for the year 1973; he intentionally assessed them twice on the same income by adding $8215.75 which had been reported and taxed in 1974 to their 1973 receipts, while refusing to make a compensating adjustment to their 1974 return. He made repeated demands for useless documentation, charged them with hiding money, and once insisted that Daniel Rutherford empty his pockets of money and let him count it. He told Daniel Rutherford "You don't think I am going to spend this much time on this audit and not come up with a considerable sum of money due and owing." And in the *coup de grace,* he arranged for his audit report to be delivered to the Rutherfords' home at 4:30 p.m. on Christmas Eve 1974. His abusive conduct caused the Rutherfords severe mental anguish; in Daniel's case, it was disabling, and he sought medical attention.

The adverse audit report eventually resulted in a deficiency assessment of $30,-958.40. Over the next few years, the Rutherfords retained a number of tax advisors and engaged in a series of administrative

---

1. Although the district court styled its decision for Agent Kuntz as a summary judgment, a reading of its order discloses that it dismissed the claim because it believed that the facts stated in the Rutherfords' pleadings did not describe a constitutional violation. Its action is properly understood as a dismissal for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and will be reviewed as such. *Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 602 n. 1 (5th Cir.1982); *compare Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489, 499–500 (5th Cir.1982).

proceedings and negotiations with the Government, but their conciliatory efforts were unsuccessful. In 1978, the Government liquidated part of its claim against them by applying their current tax payments to the disputed assessment. Two years later, the Rutherfords initiated an action in the district court for recovery of those monies applied in partial payment. The Government resisted, arguing that the district court was without jurisdiction over the refund suit because the entire assessment had not been paid; the plaintiffs, in an attempt to set the jurisdictional issue aright, filed an amended complaint stating that three days after filing the original complaint they had satisfied the jurisdictional prerequisites by paying the balance of $27,356.31 owing on the assessments.

It was at this point that the Rutherfords' claim against Agent Kuntz first surfaced. Count II of the amended complaint cast the Rutherfords' tale of the Agent's malfeasance as a willful and malicious violation of their fourteenth amendment rights; in recompense, the plaintiffs demanded compensatory damages for mental anguish and for the legal fees incurred in resisting the Government's claim, and punitive damages in retribution for Kuntz' abuses of authority.

In due course, the district court dismissed the refund claim for want of jurisdiction at the time the action was filed, *Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on rehearing,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Gresham Park Community Organization v. Howell,* 652 F.2d 1227, 1236–37 n. 25 (5th Cir.1981), and the constitutional claim

against Agent Kuntz for failure to state a claim on which relief can be granted, *see ante* note 1. The plaintiffs do not appeal the jurisdictional dismissal of their refund action.[2] What they do challenge is the decision that they failed to state a legally cognizable complaint against Agent Kuntz. Resolution of their appeal requires a careful examination of the reasoning behind that judgment.

■■■ The district court construed the Rutherfords' invocation of the fourteenth amendment as an attempt to allege a *Bivens* action[3] under the fifth amendment.[4] It interpreted their story of Kuntz' abusive behavior as a complaint that they were forced to pay taxes not due and owing; placing primary emphasis on a taxpayers' interest in recovering monies wrongfully assessed and unnecessarily paid, the court concluded that, "the only source [it could] find [ ] for the plaintiffs' claim against Kuntz is in the Fifth Amendment's proscription against any person's being 'deprived of . . . *property,* without due process of law,'" (emphasis added). The district court's construction of the plaintiffs' allegations as a statement of a property interest guided its inquiry into the constitutional adequacy of procedural protections afforded them. It observed that post-deprivation process existed in the form of available administrative and judicial proceedings for recovery of taxes over-assessed, 26 U.S.C. § 7422; 28 U.S.C. § 1346(a)(1); and that these remedies had been held constitutionally adequate, *Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *Nash Miami Motors, Inc. v. Commissioner,* 358 F.2d 636 (5th Cir.), *cert. denied,* 385

---

**2.** Although the Rutherfords' notice of appeal included the constitutional decision, the jurisdictional decision, and a separate order striking their second, unauthorized amended complaint, they abandoned their challenges to the latter two aspects of the judgment by omitting them from their briefs and oral argument. *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1030 (5th Cir. 1982).

**3.** *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**4.** The court was, of course, quite correct in doing so. Defendant Kuntz is a federal official, acting under color of federal law rather than state law. The fourteenth amendment's restrictions on the powers of the states do not apply to the federal government. The analogous limitations on federal action are embodied in the fifth amendment. *Cf. Broadway v. Block,* 694 F.2d 979, 981 (5th Cir.1982); *Seibert v. Baptist,* 594 F.2d 423, 429 (5th Cir.) (*en banc*), *reversed on other grounds, Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 142 (1966). Invoking the rationale of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1982), it held that in light of the constitutional sufficiency of these post-deprivation remedies, the plaintiffs had failed to establish that their deprivation of property was "without due process of law." It dismissed the claim on the ground that no constitutional tort had been stated.

The plaintiffs appeal its decision on the single, narrow ground that due process has not been accorded, because the available actions for recovery of taxes over-assessed are not responsive to their claims of harassment by the tax collector.

## II.

*Parratt* held that existing state tort remedies for negligent, episodic deprivations of property by state officials can satisfy the federal constitutional guarantee of procedural due process, *Parratt,* 101 S.Ct. at 1917; *Duncan v. Poythress,* 657 F.2d 691, 704–05 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 252, 74 L.Ed.2d 197 (1982). But a critical prerequisite to a determination under *Parratt* that existing post-deprivation remedies are sufficient to satisfy the requirements of due process is an ascertainment of congruity between the substantive interests asserted by the plaintiff and the interests protected by the existing remedial scheme. Remedies not responsive to the range of intangible interests claimed to be injured are not meaningful in an analysis of the adequacy of process provided. *The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 61, 103 n. 45 (Nov. 1982). *Parratt* recognized this: a state prisoner charged the prison mail room had negligently lost his hobby kit; the state provided an action for tortious losses at the hands of the state. The Court declared that because "[t]he remedies provided could have fully compensated the respondent for the property loss he suffered . . . they [were] sufficient to satisfy the requirements of due process." *Parratt,* 101 S.Ct. at 1917.[5]

The importance of congruity between the interests at issue and the remedies available was re-emphasized in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). *Logan* concerned a discharged, handicapped employee's loss of his right to pursue a claim of discriminatory termination. The Court held that the independent tort action available under state law was a constitutionally unsatisfactory substitute for his cause of action under the state Fair Employment Practices Act: because reinstatement was not a remedy available through the tort action, "even if successful [would] not vindicate entirely Logan's right to be free from discriminatory treatment," *Logan,* 102 S.Ct. at 1158. *Parratt* and *Logan* make clear that a proper application of their principles demands analysis of the adequacy of the available process to remedy the essential aspects of the interests at stake. *Accord, Engblom v. Carey,* 677 F.2d 957, 965 (2d Cir.1982). It is at this juncture that our analysis diverges from that of the district court.

We view the Rutherfords' factual allegations from a different legal perspective than did the district court. That Court thought that the heart of the Rutherfords' complaint laid in their allegation that their taxes had been over-assessed, and characterized their claim as the pursuit of a property interest. We believe that a fair reading of their charges against Agent Kuntz discloses an attempt to lay claim not to a property interest, but to a liberty interest derived from and protected by the substantive aspects of the due process clause. The

---

**5.** We recognize that the Court discounted certain dissimilarities between the available state tort remedy and the § 1983 remedy claimed by the plaintiff. It found irrelevant that the state tort remedy "provides only for an action against the State as opposed to its individual employees, it contains no provisions for punitive damages, and that there is no right to a trial by jury," *Parratt,* 101 S.Ct. at 1917. We view its refusal to contribute constitutional significance to the procedural attributes of alternative remedial schemes, and the unavailability of punitive damages in the absence of allegations of intentional wrong doing, as sharpening its emphasis on the adequacy of the available remedy to protect the essence of the interests claimed, *id.*

Rutherfords' complaint, viewed in a favorable light, sketches a portrait of a lawless and arbitrary vendetta fueled by the power of the state, designed to harass by unwarranted intrusion into the minutia of their financial affairs, and intended to abuse by the creation of palpably unfounded claims against their property which they can set to right only by unnecessary litigation. The plaintiffs ask in recompense for the agent's alleged abuses not a return of their taxes—*that* remedy they sought in their associated refund proceeding against the Government—but damages for the grief the Agent is said to have caused, *see Baskin v. Parker,* 588 F.2d 965, 970–71 (5th Cir.1979). The tax recovery proceedings available to the Rutherfords are limited strictly to a determination of the validity of the Government's demand. The statutory mechanisms for refund make no allowance for mental anguish caused by harassment, or for recovery of legal fees needlessly expended in an attempt to recover clear title to property unjustifiably claimed. *United States v. Dema,* 544 F.2d 1373, 1382 (7th Cir.1976) (Markey, dissenting). Because we believe that those injuries, not the lost money, are the dimensions of the Rutherfords' action against Kuntz, *compare Logan,* 102 S.Ct. at 1158, we find that the remedy suggested by the district court is not responsive to the wrong sketched out in the Rutherfords' complaint. In the language of procedural due process, it provides the Rutherfords no "opportunity to be heard" on their allegations that Kuntz violated their constitutional rights. *See Engblom,* 677 F.2d at 965. Because a refund proceeding is not the process that is due, we reverse the district court's decision that available judicial and administrative proceedings satisfy the fifth amendment's guarantee of due process.

### III.

A number of questions remain unresolved. Foremost is whether the substantive aspects of the due process clause actually does create in taxpayers a liberty interest in freedom from abusive behavior of the kind, degree and effect as that attributed to Agent Kuntz. Implication of nontextual substantive rights from the general monitions of the due process clause is a matter not to be undertaken lightly, but only with the caution of seasoned and mature thought. We have not had the benefit of arguments on this question; indeed, it has neither yet been addressed by the parties nor considered by the district court. In these circumstances we believe it best left for initial decision by the district court on remand, *see KSLA–TV, Inc. v. Radio Corporation of America,* 693 F.2d 544, 546 (5th Cir.1982).

If the district court should find that such an interest does exist, Kuntz' claim of qualified immunity will come into play. Resolution of that claim will turn in large part on an assessment of the quality of the underlying substantive interests: under the Supreme Court's recent reformulation of the doctrine, qualified immunity attaches unless Kuntz' "conduct violated clearly established constitutional rights of which a reasonable person should have known," *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738–39 and n. 32, 73 L.Ed.2d 396 (1982); *see Saldana v. Garza,* 684 F.2d 1159, 1163 nn. 14 & 15 (5th Cir.1982); *Barker v. Norman,* 651 F.2d 1107, 1122–25 (5th Cir.1981).[6]

Decision of these issues in the Rutherfords' favor would lead the district court to the *Bivens* issue. The Supreme Court counseled in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980) that an action in constitutional tort may be defeated "when defendants demonstrate 'special factors counseling hesitation in the absence of affirmative action by Congress' ... [or] when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substi-*

---

**6.** Kuntz has suggested that, failing acceptance of the district court's reasoning, this Court uphold its result on a finding that he is immune from liability, or that the statute of limitations ran on the Rutherfords' claim against him be-

fore they filed their action. The necessity of resolution first of the liberty interest issue, and our decision to leave this question for initial consideration in the district court, requires that decision of the immunity question be deferred.

tute for recovery directly under the Constitution and viewed as equally effective." (emphasis in original) (citations omitted). The district court may wish to consider in this connection the several suggestions, albeit in dicta, that abuse in tax collection might lay the foundation for a *Bivens* action. *See Laing v. United States,* 423 U.S. 161, 96 S.Ct. 473, 497 n. 14, 46 L.Ed.2d 416 (J. Blackmun, dissenting); *Capozzoli v. Tracey,* 663 F.2d 654, 656 n. 1 (5th Cir.1981); *Granger v. Marek,* 583 F.2d 781, 787 (6th Cir.1978) (J. Merritt, dissenting); *Dema v. Feddor,* 470 F.Supp. 152, 156–57 (N.D.Ill. 1979), *aff'd,* 661 F.2d 937 (7th Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1433, 71 L.Ed.2d 651 (1982); *cf. Continental Can Co. v. Marshall,* 603 F.2d 590, 597 (7th Cir.1979); *Angola v. Civiletti,* 666 F.2d 1 (2d Cir.1981).

And finally, there remains the question of whether the Rutherfords' claim is, in any case, barred by the statute of limitations. Resolution of this issue will require, *inter alia,* that the district court decide when the Rutherfords' claim accrued, and, possibly, whether circumstances existed which tolled the running of the proscriptive period. This issue, too, is dependent on a clearer definition of the Rutherfords' cause of action, and also on resolution of conflicting factual accounts, *Hall v. Board of School Commissioners of Mobile County, Alabama,* 681 F.2d 965, 969–70 (5th Cir.1982). Like the others, this issue belongs first before the district court.

### IV.

We reverse the district court's judgment and remand for reconsideration of the Rutherfords' constitutional claim. We urge the district court on reconsideration to give special attention to determining the date on which the Rutherfords' claim accrued, and to deciding whether the Rutherfords have shown that Kuntz' actions violated a constitutional right so clearly established that immunity would not attach.

REVERSED AND REMANDED.